UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 98-4356

DARRYL JONES, a/k/a Tall Dude,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-97-315)

Submitted: October 20, 1998

Decided: November 9, 1998

Before HAMILTON and LUTTIG, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Alan H. Yamamoto, Alexandria, Virginia, for Appellant. Helen F.
Fahey, United States Attorney, Patricia M. Haynes, Assistant United
States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Darryl Jones appeals his conviction after a jury trial for premeditated murder, in violation of 18 U.S.C. §§ 2, 1111 (1994), possession of a shank, in violation of 18 U.S.C. §§ 2, 13 (1994), and assault, in violation of 18 U.S.C. §§ 2, 113(a)(4) (1994). Finding no error, we affirm.

The Government's evidence at trial established that Jones and co-defendant Derrick Harris[1] were close friends in the Occoquan Facility, a medium security prison facility located within the Lorton Correctional Reformatory. Jones and Harris were both housed in dormitory number nine, a large open room with approximately 100 bunks. Several days prior to the murder, Harris called Rodney Hunter into a dormitory bathroom where Jones was waiting. Jones then repeatedly punched Hunter in the face while Harris acted as a lookout. Antonio Blanchard, a friend of Hunter's, witnessed Jones exiting the bathroom, and discovered Hunter in the bathroom with a cut lip and a bruised and swollen face. Hunter returned to his bed and retrieved his knife, intending to stab Jones in revenge. Prior to stabbing Jones, however, Hunter spoke with his friend Melvin Slater, who advised against stabbing Jones. In a subsequent conversation, Slater told Hunter that if Hunter did plan on "do[ing] it [getting revenge], you make sure you kill him."

Several days later, Jones approached Slater in the dormitory and accused Slater of talking about him. Slater replied that he was not going to tell Hunter to "do nothing to you, and I'm not going to tell you not to do nothing to Mr. Hunter, but I hope that you all just keep my name out of you all mouth." Jones replied that he refused to be paranoid that someone in the dormitory was going to attack him, and that someone would have to be moved out of the dorm. Slater reiterated that the dorm was big enough for all of them, and that they could successfully avoid each other and any future altercations.

_____

[1] Harris pled guilty to second degree murder.

2

After Slater returned to his bed, Antonio Worrell, another inmate, heard Jones tell Harris that they would have to straighten the situation out that night. Approximately ten to fifteen minutes after the conversation between Slater and Jones, Jones and Harris called to Slater and asked to speak with him in the dorm aisle. Slater got up out of bed and went towards them. At that point, several witnesses saw Jones stab Slater in the neck and stomach. Slater, unarmed and in an attempt to defend himself, ran towards the prison guard's office, only to be cut off by Jones. Jones and Harris chased Slater through the dorm, and once they caught him stabbed him several more times. Crime scene investigators recovered Jones' shank, which contained traces of blood. The blood was subjected to DNA analysis and tested consistent with Slater's blood. Slater died from the stab wounds.

A week before trial, the Government learned about Slater's statement to Hunter after the initial assault, to the effect that if Hunter was going to get revenge on Jones for the beating, he should ensure that he killed Jones. The trial court ordered the statement disclosed to the defense. At the close of the Government's case defense counsel stated they wished to recall Hunter as their only witness, and that they planned to elicit the statement.[2] The trial court refused to allow the statement, deeming it irrelevant.

We review a trial court's evidentiary rulings for abuse of discretion. See United States v. Ellis, 121 F.3d 908, 926 (4th Cir. 1997), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3457 (U.S. Jan. 12, 1998) (No. 97-7095). Here, the trial court did not abuse its discretion by excluding Slater's statement. To the extent that the statement could have been used to show that Jones felt threatened by Slater and acted in self-defense, there was no evidence that Jones knew about the statement, so it was irrelevant to Jones' subjective fear of Slater. See Fed. R. Evid. 401, 402. To the extent that the statement could have been introduced as part of a self-defense theory to show Slater was the aggressor, the statement is irrelevant because it did not relate to Slater's intent or plan or show that Slater himself was aggressive toward Jones, but rather related to how he thought Hunter should proceed if Hunter did intend to get revenge.

_____

2 Hunter had been a witness earlier as part of the Government's case.

3

Even assuming that excluding the statement was error, any such error was harmless in light of the overwhelming evidence of Jones' guilt and the lack of any viable self-defense theory. The evidence showed that Jones and Harris were the aggressors in the murder. Slater, on the contrary, attempted to convince Jones and Harris to calm down, and to leave himself and Hunter in peace. Jones and Harris lured Slater away from his bed into the dorm aisle and proceeded to repeatedly stab Slater. When Slater tried to run away, Jones and Harris chased him down, cornered him, and continued to stab him. Slater was unarmed during the entire assault. Accordingly, the omission of Slater's earlier statement to Hunter cannot be said to have affected the outcome, and even if it was error, it was harmless. See Sherman v. Smith, 89 F.3d 1134, 1137-38 (4th Cir. 1996), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3501 (U.S. Jan. 21, 1997) (No. 96-590); United States v. Heater, 63 F.3d 311, 325 (4th Cir. 1995), cert. denied, 516 U.S. 1083 (1996).

We affirm Jones' conviction. We dispense with oral argument because the facts and legal contentions are adequately set forth in the materials before the court and argument would not aid the decisional process.

AFFIRMED

4